# Exhibit 2



FILED

2014 JAN 24   AM 11: 09

CLERK. U.S. BANKRUPTCY COURT.
DISTRICT OF CONNECTICUT
HARTFORD

# Normandies Park

# Accounting

Normandies Park      Month _September 2012_____

| **Monthly Expenses** | | | **Rents** | |
|---|---|---|---|---|
| Electricity _____43.43_____ | Phone _____54.27_____ | | Unit 1 | 395 |
| Snow plowing /sanding _____ | Waste Disposal _____199.22_____ | | Unit 2 | 395 |
| Repairs _____ | Gas ____400*_____ | | Unit 4 | 395 |
| Septic Disposal _____ | Management Fee ____1200___ | | Unit 5 | 395 |
| Check Fees _____83*_____ | | | Unit 6 | 395 |
| Internet ___40_____ | | | Unit 7 | 395 |
| | | | #282 | 830 |
| | | | #286 | 950 |
| **Totals  Monthly Expenses** | _2019.92_____ | **Total  Rents** | | **4150** |

Month __October 2012_____

| **Monthly Bills** | | | **Rents** | |
|---|---|---|---|---|
| Electricity ___43.08_____ | Phone _____54.27_____ | | Unit 1 | 395 |
| Snow plowing /sanding _____ | Waste Disposal ____194.63_____ | | Unit 2 | 395 |
| Repairs _____ | Gas _____400*_____ | | Unit 4 | 395 |
| Septic Disposal _____ | Management Fee ___1200____ | | Unit 5 | 395 |
| Check Fees_____75*_____ | | | Unit 6 | 395 |
| Internet ___40_____ | Road Maintenance ____750_____ | | Unit 7 | 395 |
| | | | #282 | 435 |
| | | | #286 | 950 |
| **Totals Monthly Expenses** | _____2756.98 ___ | **Total Rents** | | **3755** |

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park      Month _November_ 2012 _____

| **Monthly Expenses** | | | **Rents** | |
|---|---|---|---|---|
| Electricity ___45.84___ | Phone _____ 54.27____ | | Unit 1 | 395 |
| Snow plowing /sanding __400_____ | Waste Disposal _____201.97____ | | Unit 2 | 395 |
| Repairs _____ | Gas _____400*___ | | Unit 4 | 395 |
| Septic Disposal _____300*_____ | Management Fee ____1200____ | | Unit 5 | 395 |
| Check Fees _____83*_____ | | | Unit 6 | 395 |
| Internet ___40_____ | | | Unit 7 | 395 |
| | | | #282 | 830 |
| | | | #286 | 950 |
| **Totals  Monthly Expenses** | **2725.08** | | **Total Rents** | **4150** |

Month __December  2012_____

| **Monthly Expenses** | | | **Rents** | |
|---|---|---|---|---|
| Electricity ___44.22_____ | Phone _____54.27_____ | | Unit 1 | 395 |
| Snow plowing /sanding _400_____ | Waste Disposal ___205.76_____ | | Unit 2 | 395 |
| Repairs _____ __ | Gas ____400*_____ | | Unit 4 | 395 |
| Septic Disposal _____ | Management Fee ___1200_____ | | Unit 5 | 395 |
| Check Fees _____83*_____ | | | Unit 6 | 395 |
| Internet ___40_____ | | | Unit 7 | 395 |
| | | | #282 | 830 |
| | | | #286 | 950 |
| **Totals Monthly Expenses** | _____2427.25____ | | **Total  Rents** | **4150** |

Normandies Park    Month _January 2013___

**Monthly Bills**                                                                        **Rents**

Electricity ____53.84_____            Phone _____54.27_____         Unit 1  395

Snow plowing /sanding __400_____         Waste Disposal ____200.66_____         Unit 2  395

Repairs _____              Gas           _____400*____         Unit 4  395

Septic Disposal _____             Check Fees  _____77*_____         Unit 5  395

Internet ___40_____              Road Maintenance _____         Unit 6  395

Management Fee ____1200_____                                                   #286    950

**Totals  Monthly Expenses** ____2425.77_____         **Total Rents** _____2925_____

Month __February 2013_____

**Monthly Bills**                                                                        **Rents**

Electricity ___51.66_____           Phone _____54.27_____         Unit 1        395

Snow plowing /sanding _3700____          Waste Disposal ____204.67_____         Unit 2        395

Repairs _____              Gas      ____400*_____         Unit 4        395

Septic Disposal _____           Management fee _____1200_____         Unit 5        395

Check Fees _____77*____                                                   Unit 6        395

Internet ___40_____              Road Maintenance _____         #286          950

**Totals Monthly Expenses** _____5727.60_____         **Total Rents** _____2925___

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park Month __March 2013_____

**Monthly Bills**                                                                                    **Rents**

Electricity      __51.66_____            Phone _____54.27_____          Unit 1      _395_

Snow plowing /sanding __2500_____          Waste Disposal _____204.67_____          Unit 2      _395_

Repairs _____            Gas              _____400*_____          Unit 4      _395_

Septic Disposal _____            Management Fee _____1200_____          Unit 5      _395_

Check Fees _____77*_____                                                          Unit 6      _395_

Internet _40_____            Road Maintenance _____          #286      _950_

**Totals  Monthly Expenses**          ____4527.60___            **Total Rents**  _____ _2925_____

Month __April 2013_____

**Monthly Bills**                                                                                    **Rents**

Electricity ___44.42_____            Phone _____54.21_____          Unit 1      _395_

Snow plowing /sanding _____          Waste Disposal ___206.77_____          Unit 2      _395_

Repairs _____            Gas       ___400*_____          Unit 4      _395_

Septic Disposal _____300*_____      Check Fees ___77*_____          Unit 5      _395_

Management Fee _____1200_____                                              Unit 6      _395_

Internet ___40_____            Road Maintenance ___750____          #286      _950_

**Totals Monthly Expenses**          _____3072.40_____            **Total Rents**  _____ _2925_____

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park   Month _May 2013_____

**Monthly Bills**                                                          **Rents**

Electricity      45.95_____          Phone _____ __54.27_____      Unit 1  395

Snow plowing /sanding _____        Waste Disposal _____205.57_____   Unit 2  395

Repairs _____ __           Gas          _____400*_____     Unit 4  395

Septic Disposal _____           Management Fee _____1200__ _____    Unit 5  395

Check Fees        _____77*___                                            Unit 6  395

Internet __40_____                 Road Maintenance _____      #286  950


**Totals  Monthly Expenses**            ____2022.79_____          **Total Rents**    2925_____




Month __June 2013_____

**Monthly Bills**                                                          **Rents**

Electricity ___45.95_____           Phone __ ___54.27_____     Unit 1  395

Snow plowing /sanding _____          Waste Disposal ___205.57_____   Unit 2  395

Repairs _____             Gas      ___400*_____          Unit 4  395

Septic Disposal _____300*_____   Management Fee __1200____           Unit 5  395

Check Fees         _____77*_____                                        Unit 6  395

Internet ___40_____          Road Maintenance _____      #286  950


**Totals Monthly Expenses**      _____2322.79_____          **Total Rents**    _____2925_____

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park Month __July 2013_____

**Monthly Bills**                                                                    **Rents**

Electricity _____46.24_____          Phone ____54.27_____          Unit 1    395

Snow plowing /sanding _____          Waste Disposal ____230.93__          Unit 2  395

Repairs _____          Gas _____400*____          Unit 4    395

Septic Disposal _____          Management Fee ___1200_____          Unit 5   395

Check Fees _____77*_____                                           Unit 6  395

Internet __40_____          Road Maintenance _____          #286  950

**Totals  Monthly Expenses**          ____2048.44_____          **Total Rents** __2925_____

Month __August 2013_____

**Monthly Bills**                                                                    Rents  and Other Income

Electricity ___46.33_____          Phone _____54.27_____          Unit 1 395

Snow plowing /sanding _____          Waste Disposal ___241.94_____          Unit 2 395

Repairs _4500*__Unit 7_____          Gas _____400*_____          Unit 4 395

Septic Disposal _____          Reimbursement Wells ___3000*____          Unit 5 395

Check Fees ___208.50*_____          Management Fee _____1200_____          Unit 6 395

Internet ___40_____          Road Maintenance _____          Unit 7 sale  7500

                                                                                     #286 950

**Totals Monthly Expenses**          _____9691.04_____          **Total  Income and Rents** _____10425_____

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park                    Month _September 2013_____

**Monthly Bills**                                                        **Rents** Unit 1 <u>395</u>

Electricity        <u>44.52</u>_____        Phone _____54.27_____                  Unit 2  <u>395</u>

Snow plowing /sanding _____        Waste Disposal _____241.94_____            Unit 4  <u>395</u>

Repairs    _____        Gas            _____400*_____              Unit 5  <u>395</u>

Septic Disposal _____600*_____        Management fees ____1200_____              Unit 6 <u>395</u>

Check Fees        _____67*___                                        Unit 7  <u>395</u>

Internet ___40_                        Road Maintenance _____                  # 282  <u>950</u>


**Totals  Monthly Expenses**          _____2647.73__                    **Total Rents**        **3320**




Normandies Park                    Month __October 2013_____

**Monthly Expenses**                                                     **Rents** Unit 1       <u>395</u>

Electricity ___44.52_____        Phone _____54.27_____              Unit 2      <u>395</u>

Snow plowing /sanding _____        Waste Disposal ___237.87_____            Unit 4      <u>395</u>

Repairs _____        Gas      ___400*_____              Unit 5      <u>395</u>

Management Fees _____1200____        Septic Disposal _____              Unit 6      <u>395</u>

Check Fees        _____67*__                                        Unit 7      <u>395</u>

Internet ___40_____        Road Maintenance ___750_____              #282  <u>950</u>



**Totals Monthly Expenses**        _____2793.66_____                    **Total Rents 3320**

*expenses that I pay for in cash and have no written receipts but are true and accurate

Normandies Park Month _November 2013_____

**Monthly Bills**                                                                  **Rents**

Electricity _____44.52_____        Phone _____54.27___           Unit 1    <u>395</u>

Snow plowing /sanding _____      Waste Disposal _____241.69_____    Unit 2    <u>395</u>

Repairs _____            Gas        _____400*_____        Unit 4    <u>395</u>

Septic Disposal _____300*_____    Management Fee ___1200_____       Unit 5    <u>395</u>

Check Fees _____67*_____                                            Unit 6    <u>395</u>

Internet _____40_____            Road Maintenance _____       Unit 7    <u>395</u>

                                                                            #286      <u>950</u>

**Totals  Monthly Expenses**        _____2347.48_____         **Total Rents**    _____3320_____


\*\*\*    expenses that I pay for in cash and have no written receipts but are true and accurate

# Exhibit 3

**Crystal Creek Farms  Accounting Rents and Expenses  from September 2012 to June 2013**

September 2012              Rents  unit 11 Robin way  $900.00

                                    No expenses ***

October  2012               Rents  unit 11 Robin way  $900.00

November 2012               Rents  unit 11 Robin way  $900.00

December 2012               Rents  unit 11 Robin way  $900.00

January 2013                Rents  unit 11 Robin way  $900.00

February 2013               Rents  unit 11 Robin way  $900.00

March 2013                  Rents  unit 11 Robin way  $900.00

April  2013                 Rents  unit 11 Robin way  $900.00

May 2013                    Rents  unit 11 Robin way  $900.00

June 2013                   Rents  unit 11 Robin way  $900.00

Foreclosed on property in June

Other Income foreclosure sale of 241 church st Brooklyn  272,312.60

Expense   272,312.60  See HUD sheet


*** there were expenses that were incurred but the receipts were in my house and were taken out of the house

where Robin Delaney was living in my house. The only receipts I have are the snow plowing invoices as shown

in Invoice from Berthiaume Construction.

# Exhibit 4

In reference to #4 on Document 57 . They make reference to #35 Attawaugan Crossing , that is just one parcel of 3 that they are talking about there is also parcel 47 and parcel 53 that were not included. We owed $416,775 on the total 3 parcels and it was foreclosed on by the bank . Please see other documents that I included.

A. **Settlement Statement**   U.S. Department of Housing and Urban Development   OMB No. 2502-0265

**B. Type of Loan**

| | 6. File Number | 7. Loan Number | 8. Mortgage Ins Case Number |
|---|---|---|---|
| 1. ☐FHA  2. ☐FmHA  3. ☐Conv Unins  4. ☐VA  5. ☐Conv Ins.  6. ☐Seller Finance  7. ☒Cash Sale | P8715 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| F.G. Waters, LLC
81 Inkberry Drive
Wakefield, RI 02879 | Crystal Creek Farms, LLC
241 Church Street
Brooklyn, CT 06234 | Cash Deal |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| 241 Church Street
Brooklyn, CT 06234 | Lepizzera & Laprocina Title & Escrow Services, LLC
117 Metro Center Blvd.
Suite 2001
Warwick, RI 02886  Tax ID: 202136714
Underwritten By: Chicago |

| Place of Settlement | I. Settlement Date |
|---|---|
| 245 Main St, Danielson, CT 06239 | 9/26/2013
Fund: 9/26/2013 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $272,312.60 | 401. Contract Sales Price | $272,312.60 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $3,079.00 | 403. | |
| 104. Real Estate Taxes (Due 10/15/13) | $1,685.91 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City Property Taxes | | 406. City Property Taxes | |
| 107. Condo Association | | 407. Condo Association | |
| 108. Sewer | | 408. Sewer | |
| 109. Fire District | ⠂⠂⠂ | 409. Fire District | |
| 110. | ⠂⠂⠂ | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $277,077.51 | **420. Gross Amount Due to Seller** | $272,312.60 |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | $1,000.00 | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | 502. Settlement Charges to Seller (line 1400) | $3,688.12 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Mortgage Payoff to Pease & Dorio, P.C. | $225,710.95 |
| 205. | | 505. Mtg Payoff to Cohen, Burns, Hard & Paul | $8,824.14 |
| 206. | | 506. | |
| 207. | | 507. Tax Lien Payoff | $33,349.39 |
| 208. | | 508. Tax Lien Atty Fee to Adam J. Cohen Esq | $740.00 |
| 209. | | 509. Well/Septic | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City Property Taxes | | 510. City Property Taxes | |
| 211. Condo Association | | 511. Condo Association | |
| 212. Sewer | | 512. Sewer | |
| 213. Fire District | | 513. Fire District | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $1,000.00 | **520. Total Reduction Amount Due Seller** | $272,312.60 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $277,077.51 | 601. Gross Amount due to seller (line 420) | $272,312.60 |
| 302. Less amounts paid by/for borrower (line 220) | $1,000.00 | 602. Less reductions in amt. due seller (line 520) | $272,312.60 |
| **303. Cash From Borrower** | $276,077.51 | **603. Cash Seller** | $0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following:  · HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;
· Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate;  · Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement  These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller.  These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality.

File No. P8715

| L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | $272,312.60 @ % = $0.00 | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission Paid at Settlement | | | $0.00 | $0.00 |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Loan Origination Fee % | to | | | |
| 802. Loan Discount % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Tax Service Fee | to | | | |
| 806. Processing Fee | to | | | |
| 807. Underwriting Fee | to | | | |
| 808. Courier Fee | to | | | |
| 809. Flood Determination | to | | | |
| 810. Flood Certification | to | | | |
| 811. Mortgage Broker Fee | to | | | |
| 900. Items Required by Lender To Be Paid in Advance | | | | |
| 901. Interest from 9/26/2013 to 10/1/2013 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City Property Taxes | months @ | per month | | |
| 1004. Condo Association | months @ | per month | | |
| 1005. Sewer | months @ | per month | | |
| 1006. Fire District | months @ | per month | | |
| 1007. | months @ | per month | | |
| 1008. | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee | to Lepizzera & Laprocina | | $1,750.00 | |
| 1102. Settlement Fee | to Jackson Harris & Kelley, LLC | | | $450.00 |
| 1103. Title examination | to Lepizzera & Laprocina | | $250.00 | |
| 1104. Title Commitment | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: | | ) | | |
| 1108. Title insurance | to Chicago Title Insurance Company | | $969.00 | |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage: | $0.00/$0.00 . | | | |
| 1110. Owner's coverage | $272,254.83/$969.00 | | | |
| 1111. Run Down and Record | to Lepizzera & Laprocina | | $50.00 | |
| 1200. Government Recording and Transfer Charges. | | | | |
| 1201. Recording Fees Deed $60.00 ; Mortgage ; Rel $159.00 | to Town of Brooklyn | | $60.00 | $159.00 |
| 1202. City/county tax/stamps Deed $680.78 ; Mortgage | to Town of Brooklyn | | | $680.78 |
| 1203. State tax/stamps Deed $2,042.34 ; Mortgage | to Commissioner of Revenue | | | $2,042.34 |
| 1204. Record Judgment Lien | to Town of Brooklyn | | | $53.00 |
| 1205. Record Easement | to Town of Brooklyn | | | $58.00 |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey Deletion Affidavit | to Mortgage Guarantee & Title/First American Title | | | |
| 1302. Pest Inspection | to | | | |
| 1303. Annual Reports | to CATIC | | | $220.00 |
| 1304. Overnight Mail | to Jackson Harris Hubert & Kelley, LLC | | | $25.00 |
| 1305. Discharge Tracking Fee | to SMS FasTrax | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $3,079.00 | $3,688.12 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

F.G. Waters, LLC

By Jon F. Dodd, Member

Crystal Creek Farms, LLC

By Charles A. Pappas, Member

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Settlement Agent _____ 9/26/13 Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**RETURN TO:**
**Landmark Lending, LLC**
**256 Littlefield Lane**
**Marlboro, MA 01752**

# *Warranty Deed - Statutory Form*

THAT **CRYSTAL CREEK FARMS, LLC, acting herein by CHARLES A. PAPPAS, Member,** a Connecticut Limited Liability Company, having a mailing address of P.O. Box 544, Danielson, Connecticut 06239, for consideration paid, grant to **LANDMARK LENDING, LLC,** a Massachusetts limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, having an office at 256 Littlefield Lane, Marlboro, Massachusetts 01752, with **WARRANTY COVENANTS,**

A certain tract or parcel of land on the southerly side of Darby Road in the Town of Brooklyn, County of Windham and State of Connecticut bounded and described as follows:

| | |
|---|---|
| SOUTHERLY: | By land of Charles A. Pappas; |
| EASTERLY: | By land of Edwin R. Peck; |
| WESTERLY: | By land of Forest Landowners of Eastern Connecticut/Wolf Den Trust; |
| NORTHERLY: | By Darby Road and lots 1-8 inclusive, as shown on a plan entitled: "Subdivision Prepared For Clifford B. Green, Sr. & Frances V. Green Darby Road Brooklyn, Connecticut Scale 1"=50' Date 10/1/1984 Kieltyka, Woodis & Pike Land Surveyors" revised to Nov. 14, 1984 and on file in office of the Brooklyn Town Clerk and by land of Parl R. and Brenda J. Bernier and by land of Richard and Lucy Toper. |

Contains about 23 acres of land, more or less.

Being a portion of the premises described in a certain deed from Armand Blain and Vera Harrington Blain to Clifford B. Green and Frances V. Green dated March 6, 1973 and recorded in Volume 55 at Page 24 of the Brooklyn Land Records.

Said parcel is shown as Brooklyn Assessors Map 36 Lot 90.

Subject to two pole line easements, the first to Hartford Electric Light Company dated march 11, 1927 and recorded in Volume 22 at Page 338 of the Brooklyn Land Records and the second to The Connecticut Light and Power Company dated December 23, 1968 and recorded in Volume 46 at Page 429 of the Brooklyn Land Records.

Subject to an electric distribution easement in favor of The Connecticut Light and Power Company dated April 12, 2007 and recorded in Volume 414, at Page 174 of the Brooklyn Land Records.

**Said premises are subject to a mortgage from Crystal Creek Farms, LLC to Landmark Lending, LLC in the original amount of $400,000.00, dated February 2, 2007 and recorded in Volume 408, at Page 70 of the Brooklyn Land Records.**

The grantee herein assumes and agrees to pay the taxes due the Town of Brooklyn on the October 1, 2012 Grand List and all taxes due thereafter.

Continued on next page

NEITHER GRANTORS NOR GRANTEES INTEND THERE BE, AND THERE
SHALL NOT IN ANY EVENT BE, A MERGER OF THE ABOVE REFERENCED
MORTGAGE WITH THE TITLE OR OTHER INTEREST OF GRANTEE IN AND TO THE
PROPERTY ACQUIRED BY VIRTUE OF THIS DEED.


Signed this 12th day of June, 2013.

Witnessed by:                                          CRYSTAL CREEK FARMS, LLC

_____                      By:_____
Christine A. Slover                                          Charles A. Pappas, Member

_____
George H. Jackson, III

State of Maine Connecticut )
                                        ) SS.:  Killingly              June 12 , 2013
County of Windham      )


On this the 12th day of June, 2013, before me, the undersigned officer, personally appeared,
CHARLES PAPPAS, who acknowledged himself to be a Member of CRYSTAL CREEK FARMS,
LLC, and that he, as such member, being authorized so to do, executed the foregoing instrument for
the purposes therein contained, by signing the name of the limited liability company by himself as
such Member, and as the free act and deed of said limited liability company.

       In Witness Whereof, I hereunto set my hand.

                                                          _____
                                                          Notary Public
                                                          My Commission Expires:

                          GEORGE H. JACKSON, III
                          Notary Public - State of Connecticut
                          MY COMMISSION EXPIRES APR. 30, 2017


Latest mailing address of Grantee:
256 Littlefield Lane
Marlboro, MA 01752

# Korina Peltak
# 782 Boston Post Road
# Marlborough, MA 01752
# 508-229-2488

January 10, 2014

To Whom It May Concern:

## RE: Otis St, LLC

This company was formed on October 31, 2001 by my father, who is now deceased, and Charles A. Pappas.

On February 27, 2002 Otis St, LLC purchased undeveloped land on 123 Park Avenue, Putnam, CT.

Ledle, Inc. provided the loan to purchase the property. Since 2005 this property has been the only asset in Otis St, LLC. It is undeveloped land, therefore provides NO income. Charles Pappas NEVER contributed any funds to pay for any expenses due on this property. All real estate taxes, insurance bills, and state filing fees, etc were paid for by funds from Ledle, Inc.

The loan due to Ledle, Inc. was in serious default, therefore Ledle, Inc. took a deed in lieu of foreclosure on October 25, 2012. NO money is or was due to Charles Pappas from Otis Street, LLC.

Otis St, LLC was dissolved on 11/6/2012.

I have enclosed the relevant documents for your review.

Sincerely,

Korina Peltak

Korina Peltak

Attachments:

Copy of Quit Claim Deed – from Otis St, LLC to Ledle, Inc.
Copy of HUD Statement from the Deed in Lieu of Debt
Copy of the Dissolution receipt from Secretary of State – Connecticut

Record and return to:
Ledle, Inc.
782 Boston Post Road
Marlboro, MA 01752

## *Quit Claim Deed - Statutory Form*

**THAT, OTIS STREET, LLC,** a Connecticut Limited Liability Company with a mailing address of 782 Boston Post Road, Marlboro, Massachusetts 01752, for consideration paid, grant to **LEDLE, INC.** a Massachusetts Corporation with a mailing address of 782 Boston Post Road, Marlboro, Massachusetts 01752, with **QUIT-CLAIM COVENANTS,** property known as 123 Park Road, Putnam, Connecticut, more particularly bounded and described as follows:

A certain tract or parcel of land located on the westerly side of Park Street and on the easterly side of State Highway Route #52 (Turnpike Connecticut), a non-access highway, in the Town of Putnam, County of Windham and State of Connecticut, known as 123 Park Road, being the same premises conveyed to Robert W. Randall by Warranty Deed of Albert E. Otto and Sidney Fisher dated August 1, 1968, and recorded in Putnam Land Records, Vol. 83, Pages 232-233, in said deed bounded and described as follows:

"Beginning at the northeasterly corner of the herein conveyed premises, at an iron in the ground on the westerly line of Park Street, which point is also the southeasterly corner of land of Lydia Lamport and Lydia Lamport and John H. Puffer, Trustees, said point of beginning being 1367.44 feet southerly of the northeasterly corner of land formerly of Putnam Country Club Acres, Inc., as measured along the westerly line of said Park Street; thence S. 24° 20' W., 360.0 feet, to a former Connecticut Highway Department concrete bound; thence S. 11° 41' W., 232.5 feet, to an iron in the ground replacing a concrete bound; thence S. 6° 55' W., 20 feet, to an iron in the ground; the last three courses following the westerly line of said Park Street; thence N. 73° 23' W., 692.17 feet, adjoining other land of Albert E. Otto and Sidney Fisher, to an iron in the ground in the easterly fence line of said Route #52 Connecticut; thence N. 17° 46' E., 520 feet; thence northerly on a curve to the left of 2545.53 feet radius, 191.25 feet, to an iron in the ground; the last two courses following the easterly fence line of said Route #52 Connector; thence S. 66° 40' E., adjoining land of said Lydia Lamport and Lydia Lamport and John H. Puffer, Trustees, 711.70 feet, to an iron in the ground in the westerly line of Park Street at the point and place of beginning, containing Ten (10) acres of land.

Being a portion of the premises conveyed to Albert E. Otto and Sidney Fisher by deed of Putnam Country Club Acres, Inc., dated January 16, 1968, and recorded in Putnam Land Records, Vol. 82, Pages 296-297; and being also a portion of the premises conveyed to Putnam Country Club Acres, Inc., by deed of The Pomfret Grosvenor Inns, Inc., dated March 18, 1960, and recorded in Putnam Land Records, Vol. 68, Page 336.

Being also the same premises shown on a "Plan of Land to be conveyed by Albert E. Otto & Sidney Fisher, Putnam, Connecticut, Scale 1"=60', June 26, 1968, Gilbert F. Perry, C.E." to be duly filed in the office of the Town Clerk of the Town of Putnam."

Being the same premises conveyed to The Winterburn Manufacturing Company by Warranty Deed of Robert W. Randall dated March 20, 1973, and recorded in Putnam Land Records, Vol. 93, Page 623.

Said premises are subject to an Easement for a sewer Line in favor of the Town of Putnam from The Winterburn Manufacturing Company dated April 26, 1974, and recorded in Putnam Land Records, Vol. 257, Page 160.

CONVEYANCE TAX RECEIVED
STATE $95 ²² LOCAL 23/ ²²
TOWN CLERK OF PUTNAM, CT

Town Clerk-Putnam CT
Sara J. Seney
Oct 26,2012 11:33A

Signed this 25th day of October, 2012

Witnessed by:                                    OTIS STREET, LLC

By:
George H. Jackson, III                              Charles Pappas, Member


State of Connecticut                )
                                    ) SS.: Town of: Killingly          October 25, 2012
County of Windham                   )

Personally appeared, Charles Pappas, as Member of Otis Street, LLC, signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed, and the free act and deed of the Limited Liability Company, before me.

George H. Jackson, III
Commissioner of the Superior Court


Latest mailing address of Grantee:
782 Boston Post Road
Marlboro, MA 01752

*Quit-Claim Deed*

*Statutory Form*

OTIS STREET, LLC

TO

LEDLE, INC.

Dated October 25, 2012
Received *October 26 2012*
At *11:35 A.M.*
Recorded in Putnam
LAND RECORDS
Volume *205* Page *69*
Town Clerk

*JACKSON, HARRIS, HUBERT & KELLEY, LLC*
*Attorneys At Law*
*245 Main Street*
*Danielson, CT 06239*

**B. TYPE OF LOAN:**

| 1 ☐ FHA   2 ☐ FmHA   3 ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4 ☐ VA   5 ☐ Conv. Ins | 26809 | | |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

**D. NAME AND ADDRESS OF BORROWER:** Ledie, Inc.
782 Boston Post Road
Marlboro, MA 01752

**E. NAME AND ADDRESS OF SELLER:** Otis Street, LLC
782 Boston Post Road
Marlboro, MA 01752

**F. NAME AND ADDRESS OF LENDER:**

**G. PROPERTY LOCATION:** 123 Park Road, Putnam, CT 06260
**H. SETTLEMENT AGENT:** Jackson Harris Hubert & Kelley, LLC
**PLACE OF SETTLEMENT:** 245 Main Street, Danielson, CT 06239

**I. SETTLEMENT DATE:** October 25, 2012

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | 92,700.00 | 401. Contract sales price | 92,700 00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (from line 1400) | 1,237.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | 93,937 00 | **420. GROSS AMOUNT DUE TO SELLER:** | 92 700 00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amounts of new loan(s) | 0.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposit or earnest money | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Deed in lieu debt | 92,700.00 | 509. Deed in Lieu Debt | 92,700.00 |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 92,700.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER** | 92 700.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT FROM/TO SELLER:** | |
| 301. Gross amount due from borrower (line 120) | 93,937 00 | 601. Gross amount due to seller (line 420) | 92 700 00 |
| 302. Less amount paid by/for borrower (line 220) | 92,700.00 | 602. Less total reductions in amount due seller (line 520) | 92 700 00 |
| **303. CASH ( ☑ FROM) ( ☐ TO) BORROWER:** | **$1,237.00** | **603. CASH ( ☐ TO) ( ☑ FROM) SELLER:** | **$0.00** |

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION: BASED ON PRICE $92,700.00 @ %=$ | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | |
| 801. Loan Origination Fee: | | |
| 802. Loan Discount: | | |
| 803. Appraisal fee to | | |
| 804. Credit report to | | |
| 805. Lender's inspection fee to | | |
| 806. Mortgage insurance application fee to | | • |
| 807. Assumption fee to | | |
| 808. Tax service fee to | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | |
| 901. Interest from to @ $ | | |
| 902. Mortgage insurance premium for mos to | | |
| 903. Hazard insurance premium for yrs to | | |
| 904. Flood insurance premium for yrs to | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | |
| 1001. Hazard insurance mo @ $ per mo | | |
| 1002. Mortgage insurance mo @ $ per mo | | |
| 1003. City property taxes mo @ $ per mo | | |
| 1004. County property tax mo @ $ per mo | | |
| 1005. Annual assessments mo @ $ per mo | | |
| 1006. Flood insurance mo @ $ per mo | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | 0.00 | |
| 1009. | | |
| **1100. TITLE CHARGES:** | | |
| 1101. Settlement or closing fee to Jackson Harris Hubert & Kelley, LLC | 250.00 | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| (includes above items Numbers: ) | | • |
| 1108. Title insurance to CATIC | 0.00 | |
| (includes above items Numbers: ) | | |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage | | |
| 1111. | | |
| 1112. | | |
| 1113. (Review title for insurability, clear underwriting objections, issue title policy and conduct closing) | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | |
| 1201. Recording fees: Deed $ 60.00  Mortgage $  Release $ | 60.00 | |
| 1202. City/County tax/stamps: Deed $ 231.75  Mortgage $ | 231.75 | |
| 1203. State tax/stamps: Deed $ 695.25  Mortgage $ | 695.25 | |
| 1204 | | |
| 1205 | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | |
| 1301. Survey to | | |
| 1302. Pest inspection to | | |
| 1303. | | |
| 1304 | | |
| 1305 | | |
| 1306. | | |
| 1307 | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on Line 103, Section J and line 502, Section K) | **$1,237.00** | **$0.00** |

I have carefully reviewed the HUD-1 Settlement Statement, and, to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____ Date: 10/25/2012  Seller: _____ Date: 10/25/2012
Ledle, Inc.  Otis Street, LLC

Borrower: _____ Date: _____  Seller: _____ Date: _____ •

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____  Date: 10/25/2012
George H. Jackson III, Esq.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 (Rev. 3/1986)

SECRETARY OF STATE
30 TRINITY STREET
P.O. BOX 150470
Hartford, CT 06115-0470

**Dissolution Confirmation Receipt**

| | | | |
|---|---|---|---|
| Name: | Otis St | Business ID: | 0695082 |
| Type of Request: | DISSOLUTION | Payment Received: | $50.00 |
| Request Date/Time: | 11/06/2012 12:00 PM | Filing Number: | 0004743119 |

**Payment Receipt**

| | | | |
|---|---|---|---|
| Credit Card #: | ************4486 | Authorization #: | 009618 |
| Billing Date/Time: | 11/06/2012 12:00 PM | Billing Amount: | $50.00 |

Note: You can verify the filing details from the CONCORD website http://www.concord-sots.ct.gov by clicking the business inquiry link and searching on the above mentioned Business ID.

Page 1 of 1

Commercial Recording Division

Tuesday , November 06 , 2012   CLOSE

Customer Name: **Otis Str**

## Dissolution / Withdrawn / Cancellation

    

Search Business    Select Business    Inquiry    Confirmation    Authorization    Payment

**Filing Status**

# The Business Otis St has been dissolved successfully.

Filing Number:  **0004743119**

**View Filed Report**

Done

## Business Inquiry                                                    🏠 HOME    ❓ HELP

### Business Inquiry Details

Business Name: **OTIS ST., LLC**

Business Address: **241 CHURCH STREET, BROOKLYN, CT, 06234**

Citizenship/State Inc: **Domestic/CT**

Business Type: **Domestic Limited Liability Company**

Date Inc/Register: **Oct 31, 2001**

Business Id: **0695082**

Mailing Address: **782 BOSTON POST ROAD, MARLBOROUGH, MA, 01752**

Last Report Year: **2012**

Business Status: **Dissolved**

### Principals

| Name/Title: | Business Address: | Residence Address: |
|---|---|---|
| CHARLES A. PAPPAS MEMBER | 241 CHURCH STREET, BROOKLYN, CT, 06234 | 241 CHURCH STREET, BROOKLYN, CT, 06234 |

### Business Summary

Agent Name: **CHARLES A. PAPPAS**

Agent Business Address: **241 CHURCH STREET, BROOKLYN, CT, 06234**

Agent Residence Address: **241 CHURCH STREET, BROOKLYN, CT, 06234**

[ View Filing History ]    [ View Name History ]    [ View Shares ]

[ Back ]

# Korina Peltak
# 782 Boston Post Road
# Marlborough, MA 01752
# 508-229-2488

January 10, 2014

To Whom It May Concern:

## RE: MAX CT, LLC

This company was formed on October 10, 2001 by my father, who is now deceased, and Charles A. Pappas. When this company was formed, Charles did not have the money to contribute as capital. Therefore, Ledle, Inc. loaned him the money and in the case of default, his collateral on this loan was his 50% in the company. When Pappas filed for personal bankruptcy, I provided all of the pertinent documents to receive his 50% ownership in the company, as he has NEVER paid anything towards the amount due to Ledle, Inc.

Ledle, Inc. provided the loan to purchase the property at 35, 47 and 53 Attawaugan Crossing. It is undeveloped land, therefore provides NO income. Charles Pappas NEVER contributed any funds to this company nor to pay for any expenses due on this property.

The agreement was that when 35, 47 & 53 Attawaugan Crossing sold, the proceeds would pay Ledle, Inc as the first lien holder on the property. Then the remaining funds would be used so that Pappas would repay his personal Debt to Ledle, Inc. in order to be a 50% partner in Max, CT. Then any remaining funds would be used to repay MAX, CT for the remaining amounts due from Anna Alexis, LLC. After all these debts were satisfied, any remaining proceeds from a sale of the 35, 47 & 53 Attawaugan Crosing property would then be split between the two partners.

However, it got to the point where the debt in MAX, CT far exceeded any proceeds that would be acquired by a potential sale. Therefore, Ledle, Inc. took a deed in lieu of foreclosure on October 25, 2012. NO money is or was due to Charles Pappas from MAX CT, LLC.

MAX CT, LLC will be dissolved when the remaining issues are resolved.

I have enclosed the relevant documents for your review.

Sincerely,

Korina Peltak

Korina Peltak

Copy of Quit Claim Deed – from MAX CT, LLC to Ledle, Inc.
Copy of HUD Statement from the Deed in Lieu of Debt


Record and return to:
Ledle, Inc.
782 Boston Post Road
Marlboro, MA 01752

Local Tax $1041 94
State Tax $3125 81

Elizabeth M. Wilson, Town Clerk

## *Quit Claim Deed – Statutory Form*

**THAT, MAX CT, LLC,** a Connecticut Limited Liability Company with a mailing address of 782 Boston Post Road, Marlboro, Massachusetts 01752, for consideration paid, grant to **LEDLE, INC.** a Massachusetts Corporation with a mailing address of 782 Boston Post Road, Marlboro, Massachusetts 01752, with **QUIT-CLAIM COVENANTS,** property known as 35, 47 & 53 Attawaugan Crossing Road, Killingly, Connecticut, more particularly bounded and described on Schedule "A" attached hereto and made a part hereof.

Signed this 25th day of October, 2012

Witnessed by:                                          MAX CT, LLC

George H. Jackson, III                     By: _____
                                                           Charles Pappas, Member

State of Connecticut        )
                                          ) SS.  Town of: Killingly            October 25, 2012
County of Windham          )

Personally appeared, Charles Pappas, as Member of Max CT, LLC, signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed, and the free act and deed of the Limited Liability Company, before me.

George H. Jackson, III
Commissioner of the Superior Court

Latest mailing address of Grantee:
782 Boston Post Road
Marlboro, MA 01752

## 53 Attawaugan Crossing

Beginning at a concrete highway bound at the intersection of the easterly
line of Ramp "G" of State Highway Route #52 with the southerly line of Attawaugan
Crossing Road, said concrete highway bound marking the northwesterly corner
of the within described tract of land;

thence in an Easterly direction along the southerly line of Attawaugan Crossing
Road by the arc of a curve to the right the radius of which is 2839.79 feet
and the chord of which runs S 81 30' 09" E 101.57 feet, to a concrete
highway bound at the easterly end of said curve;

thence S 80 29' 00" E 214.88 feet, along the southerly line of Attawaugan Crossing
Road, to a concrete highway Bound;

thence S 75 45' 30" E 41.56 feet, along the southerly line of Attawaugan Crossing
Road, to a brass pin;

thence S 63 08' 00" E 2.34 feet, along the southerly line of Attawaugan Crossing
Road, to an iron bound at a corner of wall;

thence S 13 38' 00" W 393.8 feet, along wall adjoining a jog in the southerly line
of Attawaugan Crossing Road and adjoining land now or formerly of Robert
J. Torrey, to a corner of wall;

thence N 69 14' 30" W 185.51 feet, along wall adjoining land now or formerly of
Adsiard Levesque and Alice L. Levesque, to a corner of wall;

thence S 21 30' 00" W 333.63 feet, along wall adjoining land now or formerly of
said Adelard Levesque and Alice L. Levesque, to a point in the easterly
line of the before mentioned Ramp "G" of State Highway Route #52;

thence N 2 21' 30" E 307.30 feet, along fence on the easterly line of said Ramp
"G", to a concrete highway bound;

thence N 4 30' 30" E 265.31 feet, along fence on the easterly line of said Ramp
"G", to the place of beginning.

Containing 4.18 acres of land, more or less,

State Highway Route #52 is a non-access highway and there is no access dir-
ectly from the herein described tract of land onto State Highway Route #52 or its
Ramp "G".

There is no access also for use within described premises directly onto
Attawaugan Crossing Road for a distance of 188.40 feet, measured Easterly from
the concrete highway bound at the intersection of the easterly line of Ramp "G"
of State Highway Route #52 with the southerly line of Attawaugan Crossing Road,

Subject to a 20 foot drainage right of way granted the State of Connecticut ,
from the southerly side of Attawaugan Crossing Road onto the hereinbefore
described premises, subject also to the right of the State of Connecticut to dis-
charge water from a ditch or pipe in said right of way onto and over the herein-
before described premises as described in a deed from Bernice E. Skinner to
the State of Connecticut dated November 4, 1965, and recorded in Vol. 162, at
Pages 456-457, of the Killingly Land Records.

Being the same premises conveyed to Five Mile River Associates by Bernice E
Skinner by her Warranty Deed dated February 25, 1976 on I recorded in Volume 213 at
page 25 of the Killingly Land Records

There is excepted from the foregoing the following parcel

A certain strip of land located on the southerly side of
Attawaugan Crossing Road lying between the existing center-
line of Attawaugan Crossing Road and a proposed street line,
which line is 33 feet from and parallel to said centerline
of the existing pavement of Attawaugan Crossing Road.

The purpose of this deed is to convey to the Town a strip
of land for future road widening purposes.

Being the same premises conveyed to the Town of Killingly by Five Mile River
Associates by its Quit Claim deed dated December 3, 1987 and recorded in Volume 412
at page 52 of the Killingly Land Records.

All of the foregoing premises are conveyed subject to the following

1 All restrictions and easements of record.

2. Subject to a right of way twenty-five feet in width known as Woods Road extending in a
southerly direction from Attawaugan Crossing Road.

3. Flowage rights extending from Attawaugan Crossing Road.

4. Connecticut Interstate 395 is a non-access highway and there is no access directly from the
herein described tract of land onto Connecticut Interstate 395 or its Ramp "G".

5. There is no access within the described premises directly onto Attawaugan Crossing Road for
a distance of 166.40 feet measured easterly from the concrete bound at the intersection east of
the line of Ramp "G" of Connecticut Interstate 395 with the southerly line of Attawaugan
Crossing Road.

6 Subject to a 20 foot drainage right of way granted to the State of Connecticut from the
southerly side of Attawaugan Crossing Road onto the hereinbefore premises, subject also to the
right of the State of Connecticut to discharge water from a ditch or pipe in said right of way onto
and over the hereinbefore described premises as described in a deed from Bernice E. Skinner to
the State of Connecticut dated November 4, 1965, and recorded in Volume 162, at Page 456-457,
of the Killingly Land Records.

7. Said property is conveyed without access to Route 395

8. Current real property taxes due to the Town of Killingly and all such taxes hereafter coming
due which the Grantee assumes and agrees to pay.

47 Attawaugan Crossing

FIRST TRACT: All that certain tract or parcel of land, with all the buildings thereon standing, situated in the Village of Attawaugan, in the Town of Killingly, and bounded and described as follows:

Northerly by land now or formerly of Thomas Hughes and land now or formerly of Edwin Waterhouse; easterly by land now or formerly of The Attawaugan Company; southerly by land now or formerly of the said The Attawaugan Company and westerly by land now or formerly of Edwin Waterhouse. Together with the privilege of passing with teams or otherwise on land of Thomas Hughes adjoining land of Edwin Waterhouse not to exceed 25 feet wide, conditioned that that grantee, his successors and assigns, keep the bars, gates and fences up at each end of said passway or that it shall fence out said passway if it sees proper.

EXCEPTING from the above described parcel of land conveyed to the State of Connecticut by deed recorded in Volume 153 at Page 258 of the Killingly Land Records.

Being the same premises conveyed to Ernest A. Bigelow and Joseph A. Lozier by Elizabeth W. Walrath by her Warranty Deed dated August 18, 1984, recorded in Volume 322 at Page 148 of the Killingly Land Records.

### 35 Attawaugan Crossing

Beginning at an iron pin at the southerly side of the Attawaugan Crossing Road, said iron pin marking the northeasterly corner of the within described tract and the northwesterly corner of land formerly of the within grantor and now or Roger R. Frechette and Dorothy Frechette; thence S 25° 47' 22" E 180 feet, to an iron post at a corner of said Frechette land; thence S 62° 43' 01" E 242.18 feet bounding along said Frechette land to a point on the westerly boundary of land now or formerly of George Rene Caron; thence S 27° 13' 06" W 352.13 feet along land of said Caron to a stone monument and a point at a corner of said Caron land, said point marking the southeasterly corner of the within described tract; thence N 66° 51' 33" W 673.72 feet bounding along land of said Caron to a point, said point marking the southwest corner of the within described tract, a northwest corner of land of George Rene Caron, the northeast corner of land now or formerly of Burton L. and Rita E. Everts, and the southeasterly corner of land now or formerly of Bernice E. Skinner; thence N 61° 03' 59" E 599.70 feet bounding along land now or formerly of said Skinner to a point on the southerly side of Attawaugan Crossing Road, said point marking the northwesterly corner of the within described tract; thence S 15° 03' 00" E 7 feet; thence S 62° 43' 01" E 434.78 feet along the southerly side of the Attawaugan Crossing Road to the point or place of beginning.

Subject to a right of way 25 feet in width and conditions as set forth in a deed from Calvin G. Kelley to Betsey Eldridge, dated November 16, 1860, and recorded in Killingly Land Records, Volume 41, Page 412.

Said premises are also subject to an Easement from Mary A. Hughes to The Connecticut Light & Power Company, dated February 25, 1935, and recorded in Killingly Land Records, Volume 67 at Page 238, and an Easement from Robert J. Torrey and Pauline C. Torrey and Mary A. Hughes to Connecticut Light & Power Company, dated May 3, 1940, and recorded in Killingly Land Records Volume 108 at Page 96.

Being the same premises conveyed to Five Mile River Associates by Robert J. Torrey by his Warranty Deed dated November 28, 1973 recorded in Volume 202 at Page 345 and by Robert J. Torrey by his Warranty Deed dated January 16, 1975 recorded on January 21, 1975 in Volume 207 at Page 733 of the Killingly Land Records.

There is excepted from the foregoing the following parcels:

First Tract:

Beginning at an iron pin in the southerly line of the Attawaugan Crossing Road, said iron pin marking the northwesterly corner of the within described parcel of land and the northeasterly corner of other land of the releasors, said iron pin being 240.00 feet westerly from a monument marking the northwesterly corner of land now or formerly of George Rene Caron; thence S 25° 47' 22" W, 180 feet bounded on other land of the within releasors to an iron pin; thence S 62° 43' 01" E 52.15 feet bounding on other property of said Five Mile River Associates; thence N 27° 13' 06" E 180 feet bounded on land of Roger R. Fre-chette and Dorothy F. Frechette to the southerly side of Attawaugan Crossing Road; thence N 62° 43' 01" W 56.00 feet along the southerly side of said road to the point and place of beginning.

Said premises being a portion of those described on a certain plan entitled "Five ac Land Owed by Five Mile River Associates, Killingly, Connecticut, Scale 1" = 30' June 21, 1974 Perry & Pieter, Engineer & Surveyors".

Being the same premises conveyed by Five Mile River Associates to Robert J. Torrey by its deed dated December 10, 1974 and recorded in Volume 203 at Page 728 of the Killingly Land Records.

Second Tract

A certain strip of land located on the southerly side of Attawaugan Crossing Road lying between the existing center-line of Attawaugan Crossing Road and a proposed street line, which line is 35 feet from and parallel to said centerline of the existing pavement of Attawaugan Crossing Road.

The purpose of this deed is to convey to the Town a strip of land for future road widening purposes.

Being a portion of land conveyed by Robert J. Torrey to Five Mile River Associates in a certain Warranty Deed dated January 16, 1975 and recorded in Volume 207 at Page 733 of the Killingly Land Records.

Being the same premises conveyed by Five Mile River Associates to the Town of Killingly by its deed dated December 3, 1987 recorded in Volume 412 at Page 54 of the Killingly Land Records.

| B. TYPE OF LOAN: | | | | | |
|---|---|---|---|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv. Unins. | | 6. File Number | 7. Loan Number | | 8. Mortgage Insurance Case Number |
| 4. ☐ VA  5. ☐ Conv. Ins | | 28674 | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:** Ledle, Inc.
782 Boston Post Road
Marlboro, MA 01752

**E. NAME AND ADDRESS OF SELLER:** MAX CT, LLC
782 Boston Post Road
Marlboro, MA 01752

**F. NAME AND ADDRESS OF LENDER:**

**G. PROPERTY LOCATION:** 35, 47 & 53 Attawaugan Crossing Road, Killingly, CT
**H. SETTLEMENT AGENT:** Jackson Harris Hubert & Kelley, LLC
**PLACE OF SETTLEMENT:** 245 Main Street, Danielson, CT 06239

**I. SETTLEMENT DATE:** October 25, 2012

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | 416,775.00 | 401. Contract sales price | 416,775.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (from line 1400) | 4,482.75 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE:** | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | 421,257.75 | **420. GROSS AMOUNT DUE TO SELLER:** | 416,775.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amounts of new loan(s) | 0.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposit or earnest money | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Deed in lieu debt | 416,775.00 | 509. Deed in lieu debt | 416,775.00 |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513 | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516 | |
| 217. | | 517. | |
| 218. | | 518 | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | 416,775.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | 416,775.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT FROM/TO SELLER:** | |
| 301. Gross amount due from borrower (line 120) | 421,257.75 | 601. Gross amount due to seller (line 420) | 416,775.00 |
| 302. Less amount paid by/for borrower (line 220) | 416,775.00 | 602. Less total reductions in amount due seller (line 520) | 416,775.00 |
| **303. CASH ( ☑ FROM) ( ☐ TO) BORROWER:** | **$4,482.75** | **603. CASH ( ☐ TO) ( ☑ FROM) SELLER:** | **$0.00** |

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION:** BASED ON PRICE $416,775.00 @ % $ | | |
| DIVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | |
| 801. Loan Origination Fee: | | |
| 802. Loan Discount: | | |
| 803. Appraisal fee to | | |
| 804. Credit report to | | |
| 805. Lender's inspection fee to | | |
| 806. Mortgage insurance application fee to | | |
| 807. Assumption fee to | | |
| 808. Tax service fee to | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | |
| 901. Interest from to @ $ | | |
| 902. Mortgage insurance premium for mos to | | |
| 903. Hazard insurance premium for yrs to | | |
| 904. Flood insurance premium for yrs to | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | |
| 1001. Hazard insurance mo @ $ per mo | | |
| 1002. Mortgage insurance mo @ $ per mo | | |
| 1003. City property taxes mo @ $ per mo | | |
| 1004. County property tax mo @ $ per mo | | |
| 1005. Annual assessments mo @ $ per mo | | |
| 1006. Flood insurance mo @ $ per mo | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | 0.00 | |
| 1009. | | |
| **1100. TITLE CHARGES:** | | |
| 1101. Settlement or closing fee to Jackson Harris Hubert & Kelley, LLC | 250.00 | |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| (includes above items Numbers: ) | | |
| 1108. Title insurance to CATIC | 0.00 | |
| (includes above items Numbers: ) | | |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage | | |
| 1111. | | |
| 1112 | | |
| 1113. (Review title for insurability, clear underwriting objections, issue title policy and conduct closing) | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | |
| 1201. Recording fees: Deed $ 65.00 Mortgage $ Release $ | 65.00 | |
| 1202. City/County tax/stamps: Deed $ 1,041.94 Mortgage $ | 1,041.94 | |
| 1203. State tax/stamps: Deed $ 3,125.81 Mortgage $ | 3,125.81 | |
| 1204 | | |
| 1205 | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | |
| 1301. Survey to | | |
| 1302. Pest inspection to | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on Line 103, Section J and line 502, Section K) | $4,482.75 | $0.00 |

I have carefully reviewed the HUD-1 Settlement Statement, and, to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: Ledle, Inc.   Date: 10/25/2012   Seller: MAX CT, LLC   Date: 10/25/2012

Borrower:   Date:   Seller:   Date:

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: George H. Jackson III, Esq.   Date: 10/25/2012

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 (Rev. 3/1986)

# Exhibit 5

There is 5 LLCs which have NO Income or Expenses as follows.

Anna Alexis LLC

Northeast Waste LLC

Otis St LLC

Max Ct LLC

Pappas Homes LLC

# Exhibit 6

In reference to #6 on Document 57 , I did add my personal expenses in the original accounting because I was told from my former attorney Derek Poirior to write down everything I spent the monies on not just the LLCs. I have taken all the personal expenses out of the current accounting.

# Exhibit 7

In reference to #7 of Document 57,  As stated before I was told by my former attorney to write down all my expenses for both llcs and my personal expenses included. I asked him what I should put down rent or mortgage and he told me both because I pay the owners mortgage for my rent . I have deleted all personal expenses from the LLC accounting

# Exhibit 8

In reference to #8 in Document 57, I was told by my former attorney Derek Poirior to include all my expenses . I have deleted the ones which I do not use directly with the LLCs and are an expense. I did keep the ones which I use for the LLCs benefit. Including Electricty, internet ,phone, Check fees and gas expenses.

# Exhibit 9

In reference to #9 on document 57, I was told by my former attorney  Derek Poirior to write down in a general term to explain the accounting for where the rent monies went. I have changed all of the expenses to be as accurate as I can be .There is no more round numbers . All of my expenses are now accurate numbers.

# Exhibit 10

In reference to #10 on Document 57 , I have answered all the questions to the best of my ability  and sworn to all my answers .

# Exhibit 11

In reference to #11 on Document 57. All of the rent receipts are consistent except August 2013 and I will explain what I did as follows.

On or around December 2012 Unit #7 Mr Plante died and his family contacted me and told me they wanted to sell his unit for 3000 dollars . In the interim D Wells contacted me about the vacant trailer and he bought it from the estate of Plante. Once he got into the unit and found out how much work there was in fixing the unit up. He never paid me any lot rent . After 7 months of trying to get him to pay he agreed to let me fix it up and sell the unit and return his 3000 to him. The tenant who lived in #282 agreed to fix it up for 4500 dollars and that money would pay for some of the back rent #282 owed me. He fixed the trailer and it was sold for $7500 to Mark Stevens who currently resides there however Mr stevens is now in default  because he hasn't paid his rent .

# Bill of Sale

August 16,2013

Sold to Mark Stevens,   One 1975 Hillcrest /2000 mobile Home
Serial # 0211-862h

 Number 7 in Normandies Park , Dayville Ct  in "As Is As shown"
condition for the sum of  $7500.00

| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 3018074796 | 286869784–00001 | Past Due | 9 of 11 |

## Summary for Charles Pappas: 860–305–3136

*Normandies Park phone*

### Your Plan

**SHARE EVERY UNL TLK&TXT 4GB**
(see pg 3)

Have more questions about your charges?
Get details for usage charges at
www.verizonwireless.com. Sign into My
Verizon to View Online Bill and click on Calls,
Messages & Data.

### Monthly Charges

| | | |
|---|---|---|
| Smartphone Line Access | 01/03 – 02/02 | 40.00 |
| Total Equipment Coverage – **Asurion** | 01/03 – 02/02 | 9.99 |
| | | **$49.99** |

### Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| SharePlan | *minutes* | unlimited | 1787 | — | — |
| Mobile to Mobile | *minutes* | unlimited | 464 | — | — |
| Night/Weekend | *minutes* | unlimited | 610 | — | — |
| **Total Voice** | | | | | **$.00** |

| Messaging | | | | | |
|---|---|---|---|---|---|
| Text, Picture & Video | *messages* | unlimited | 473 | — | — |
| **Total Messaging** | | | | | **$.00** |

| Data | | | | | |
|---|---|---|---|---|---|
| Gigabyte Usage | *gigabytes* | 4.000 (shared) | .168 | — | — |
| **Total Data** | | | | | **$.00** |
| **Total Usage and Purchase Charges** | | | | | **$.00** |

| **Verizon Wireless' Surcharges +** | |
|---|---|
| Fed Universal Service Charge | .65 |
| Regulatory Charge | .21 |
| Administrative Charge | .90 |
| Maine Univ Service Fund Charge | .30 |
| ME Service Provider Tax Charge | 1.63 |
| ME School and Library Fund | .14 |
| | **$3.83** |

| **Taxes, Governmental Surcharges and Fees +** | |
|---|---|
| ME State 911 Surcharge | .45 |
| | **$.45** |

| **Total Current Charges for 860–305–3136** | **$54.27** |
|---|---|

+Percentage–based taxes, fees, and surcharges apply to charges for this line, including overage
charges, plus this line's share of account charges.

| **Berthiaume Construction Inc.** | | TO: | **Normandies Park** |
| 265 Thompson Rd. | | | **Rt 12 Dayville Ct** |
| Webster, Mass. 01570 | | | **PO Box 252** |
| **Turf Technologies** | | | **Dayville Ct 06239** |
| Uxbridge, Mass. | | | **Att Charlie Pappas** |
| | | | **Customer ID** |

| SALESPERSON | JOB | PAYMENT TERMS | DUE DATE |
|---|---|---|---|
| Dan | Invoice Statements 9/ 2012 and 12/2013 | | |

| | DESCRIPTION | UNIT PRICE | LINE TOTAL |
|---|---|---|---|
| October 2012 | Road Grading | | 750.00 |
| November 2012 | Snowplowing/Sanding | | 400.00 |
| December 2012 | Snowplowing/Sanding | | 350.00 |
| January 2013 | Snowplowing/Sanding | | 400.00 |
| Febuary 2013 | Snowplowing/Sanding storm " elmo" | | 3700.00 |
| March 2013 | Snowplowing/Sanding | | 2500.00 |
| April 2013 | Road Grading | | 750.00 |
| October 2013 | Road Grading | | 750.00 |

Subtotal

Sales Tax

Total

THANK YOU FOR YOUR BUSINESS!

**Berthiaume Construction Inc.**
265 Thompson Rd.
Webster, Mass. 01570
**Turf Technologies**
Uxbridge, Mass.

TO:     **Crystal Creek Farms**
        **Darby Rd**
        **Brooklyn Ct 06234**

| SALESPERSON | JOB | | PAYMENT TERMS | DUE DATE |
|---|---|---|---|---|
| Dan | Invoice Statements 9/ 2012 and 12/2013 | | | |
| | DESCRIPTION | | UNIT PRICE | LINE TOTAL |

| | | | | |
|---|---|---|---|---|
| November 2012 | Snowplowing/Sanding | 11/27 | | 350.00 |
| December 2012 | Snowplowing/Sanding | 12/26 | | 250.00 |
| January 2013 | Snowplowing/Sanding | 1/16 | | 300.00 |
| Febuary 2013 | Snowplowing/Sanding storm " nemo" | 2/8 | | 3500.00 |
| March 2013 | Snowplowing/Sanding | 3/7 | | 1900.00 |

Subtotal
Sales Tax
Total

THANK YOU FOR YOUR BUSINESS!



**Time Warner Cable®**

Please detach and enclose this coupon with your payment.

** Please allow 7-10 days for delivery and payment processing. See reverse side for more convenient payment options.

3440 W ARROWOOD RD CHARLOTTE NC 28273-0001

Payment due date
**upon receipt**

Total amount due
**$161.14**

CHARLES A PAPPAS
PO BOX 211
ROXBURY ME    04275-0211

Account number
**202 - 6878660001-001**

Amount enclosed

customer code above on hand.

**Through your mobile device**

08916001202687866001151111114

TIME WARNER CABLE
PO BOX 70872
CHARLOTTE NC 28272-0872

40 se Internet

Line Items
HD Set-Top Box                -3.20
Remote                         .20
Standard Internet            -20.07

**STATEMENT**

Allied Waste Services
1 Hardscrabble Drive
Auburn MA  01501
(508) 832-9001

ACCOUNT 954-0200675
STATEMENT DATE:  1/13/14

PLEASE DIRECT INQUIRIES TO:

(508) 832-9001

NORMANDIES PARK
PO BOX 252
DAYVILLE CT  06241-0252

| Invoice_# | Transaction Date | Transaction Description | Transaction Amount | Applied Amount | Balance_ |
|---|---|---|---|---|---|
| 954000728161 | 9/25/12 | INVOICE | 199.22 | | 199.22 |
| 954000736652 | 10/25/12 | INVOICE | 194.63 | | 194.63 |
| 954000744010 | 11/25/12 | INVOICE | 201.97 | | 201.97 |
| 954000764930 | 12/25/12 | INVOICE | 205.76 | | 205.76 |
| 954000773299 | 1/25/13 | INVOICE | 200.66 | | 200.66 |
| 954000780737 | 2/25/13 | INVOICE | 204.67 | | 204.67 |
| 954000801111 | 3/25/13 | INVOICE | 206.97 | | 206.97 |
| 954000813930 | 4/25/13 | INVOICE | 206.77 | | 206.77 |
| 954000824665 | 5/25/13 | INVOICE | 205.57 | | 205.57 |
| 954000845794 | 6/25/13 | INVOICE | 236.30 | | 236.30 |
| 954000854497 | 7/25/13 | INVOICE | 230.93 | | 230.93 |
| 954000864137 | 8/25/13 | INVOICE | 241.94 | | 241.94 |
| 954000884640 | 9/25/13 | INVOICE | 241.94 | | 241.94 |
| 954000893643 | 10/25/13 | INVOICE | 237.87 | | 237.87 |
| 954000902070 | 11/25/13 | INVOICE | 241.69 | | 241.69 |
| 954000922149 | 12/25/13 | INVOICE | 241.17 | | 241.17 |

**TOTAL INVOICES**

# Invoice

| Charles Pappas | TO | Normandies Park LLC |
|---|---|---|
| PO Box 211 | | PO Box 252 |
| Roxbury Maine 04275 | | Dayville Ct 06239 |

| 9/2012 | Management Fee | 1200.00 |
|---|---|---|
| 10/2012 | Management Fee | 1200.00 |
| 11/2012 | Management Fee | 1200.00 |
| 12/2012 | Management Fee | 1200.00 |
| 01/2013 | Management Fee | 1200.00 |
| 02/2013 | Management Fee | 1200.00 |
| 03/2013 | Management Fee | 1200.00 |
| 04/2013 | Management Fee | 1200.00 |
| 05/2013 | Management Fee | 1200.00 |
| 06/2013 | Management Fee | 1200.00 |
| 07/2013 | Management Fee | 1200.00 |
| 08/2013 | Management Fee | 1200.00 |
| 09/2013 | Management Fee | 1200.00 |
| 10/2013 | Management Fee | 1200.00 |
| 11/2013 | Management Fee | 1200.00 |

**Service Account #:** 149482006      **Address:** ROUTE 12 DAYVILLE CT 06241

**Service Type:** ELECTRIC      **Meter #:** 891553512  **Rate:** RATE 30-DELIVERY

| From Date | To Date | # of Days | RD1 Usage | RD2 Usage | Bill Demand | Bill Amount |
|---|---|---|---|---|---|---|
| 11-07-2013 | 12-10-2013 | 33 | 67.0 | 0.7 | 0.7 | $45.70 |
| 10-09-2013 | 11-07-2013 | 29 | 56.0 | 0.7 | 0.7 | $44.52 |
| 09-11-2013 | 10-09-2013 | 28 | 56.0 | 0.6 | 0.6 | $44.52 |
| 08-12-2013 | 09-11-2013 | 30 | 125.0 | 1.0 | 1.0 | $51.95 |
| 07-11-2013 | 08-12-2013 | 32 | 72.0 | 0.8 | 0.8 | $46.24 |
| 06-30-2013 | 07-11-2013 | 11 | 26.1 | 0.7 | 0.7 | $16.93 |
| 06-11-2013 | 06-30-2013 | 19 | 44.9 | 0.7 | 0.7 | $29.21 |
| 05-10-2013 | 06-11-2013 | 32 | 68.0 | 0.6 | 0.6 | $45.95 |
| 04-10-2013 | 05-10-2013 | 30 | 54.0 | 0.7 | 0.7 | $44.42 |
| 03-11-2013 | 04-10-2013 | 30 | 49.0 | 0.6 | 0.6 | $43.87 |
| 02-08-2013 | 03-11-2013 | 31 | 120.0 | 1.1 | 1.1 | $51.66 |
| 01-10-2013 | 02-08-2013 | 29 | 140.0 | 1.1 | 1.1 | $53.84 |
| 12-31-2012 | 01-10-2013 | 10 | 15.9 | 0.6 | 0.6 | $14.16 |
| 12-10-2012 | 12-31-2012 | 21 | 33.1 | 0.6 | 0.6 | $30.06 |
| 11-07-2012 | 12-10-2012 | 33 | 61.0 | 0.7 | 0.7 | $45.84 |
| 10-10-2012 | 11-07-2012 | 28 | 38.0 | 0.5 | 0.5 | $43.08 |
| 09-11-2012 | 10-10-2012 | 29 | 41.0 | 0.4 | 0.4 | $43.43 |
| 08-10-2012 | 09-11-2012 | 32 | 65.0 | 0.6 | 0.6 | $46.33 |

I declare that, to the best of my knowledge and belief, the information herein is true, correct and complete.

Charles Pappas

Subscribed and sworn to before me this _3 l._ day of January , 2014 in Rumford,Maine

Notary Public

FILED

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT**

2014 JAN 24 AM 10: 28

In re:

CHARLES PAPPAS,

Debtor

)
)
)
)
)
)

Case No.
12-22099 (ASD)

Chapter 7

CLERK. U.S. BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD

## MOTION FOR SANCTIONS FOR VIOLATION OF ORDER
## FOR ACCOUNTING OF ESTATE PROPERTY BY DEBTOR

TO THE HONORABLE ALBERT S. DABROWSKI, U.S. Bankruptcy Judge:

Judgment-Creditor Donna Parris hereby moves for an order imposing sanctions in connection with Debtor Charles Pappas's violation of this Court's Order for Expedited Accounting and Turnover of Estate Property (the "Order") (ECF No. 50).

1.      On November 19, 2013, the Court ordered that the Debtor file with the Court an accounting of (1) all proceeds from the sale of real property, (2) rents, and (3) uses of cash by any and all limited liability companies in which the Debtor holds membership interests (the "LLCs"). *See id.*

2.      On December 5, 2013, with the aid of counsel, the Debtor filed a document captioned "Accounting." *See* ECF 56.

3.      The Debtor's Accounting is so deficient as to amount to a violation of the Order, warranting the imposition of sanctions.

4.      First, the Accounting selectively identifies real estate transactions for disclosure, but omits others. For example, the Debtor's Schedule A, as amended on October 26, 2012, lists a 50% interest in the property at 35 Attawaugan Crossing, Dayville, Connecticut (the "Attawaugan Property"). *See* ECF No. 15.1 at 1. The Debtor valued the Attawaugan Property

at \$85,300.00. *See id.* Publically-available tax records establish that the day *before* the Debtor filed his amended schedules, the Attawaugan Property was sold for \$416,775. *See* Ex. A (a true copy of search results obtained by undersigned from Town of Killingly Assessor's Office public database). This sale is not mentioned in the Accounting.

→⁵· Second, the Accounting does not break-out income and expenses among the seven LLCs in which the Debtor has an interest. *See* ECF No. 15-1 at 1-2 (Debtor's Amended Schedules A & B). As a result, it is impossible to determine which LLCs had income, which had expenses, and in what amounts.

→⁶· Third, the Accounting characterizes all payments made by the LLCs as "expenses paid." *See* ECF 56 at 1. On the face of the Accounting, many of those alleged payments were obviously for the Debtor's – and not the LLCs' – benefit. That is, they are not "expenses paid" on the LLCs' behalf, but rather appear to be unauthorized distributions of cash or benefits to the Debtor. For example, the Accounting lists \$4,900 in payments for "Food." The LLCs at issue have no legitimate need to purchase food, so these payments were necessarily made for the Debtor's benefit. An accurate accounting would characterize these payments as equity distributions to the Debtor.

→⁷· The same is true with respect to the \$13,398 in "Mortgage/rent" expenses paid. The LLCs with scheduled assets and income are Normandies Park LLC and Crystal Creek Farms LLC. In the Debtor's schedules, there are no mortgages identified on properties owned by Normandies Park, and thus there would be no need to pay a mortgage expense. Likewise, while the properties formerly owned by Crystal Creek Farms were encumbered with mortgages, it is undisputed that the Debtor stopped paying the relevant lender in June 2012. *See* ECF No. 29 ¶¶ 3-4 (Avidia Bank's Motion for Relief from Stay). Further, the Debtor's schedules do not

2

disclose any leasehold interests held by LLCs or otherwise, and thus the LLCs have no need to pay any "rent" expense. As such, it is evident that supposed payments by the LLCs for "Mortgage/rent" were either paid on the Debtor's behalf or are simply fraudulent.

8. These discrepancies call into question the remainder of the vague descriptions for the payment of over $20,000 in expenses that could easily be associated with an individual, as opposed to an LLC, including "Cable," "Phone," "Gas," "Propane," "Fees," "Misc.," "Taxes," and "Electricity."

9. Fourth, the consistently round numbers of the expenses from month-to-month (*i.e.* $200 electricity bills for 14 months straight) suggest the "Accounting" is not an accounting at all, but at best, a rough estimate.

10. Fifth, the Accounting selectively relies on documentation when it is amenable to the Debtor, attaching two documents, but no others. Without documentation, the Court is left to rely on the unsworn assertions in the Accounting, which provide no details or explanations.

11. Sixth, in some instances, the rents described in the Accounting inexplicably vary from month-to-month by more than 100%. For example, per the Accounting, rents collected in July 2013 were allegedly $2,925, but rents collected in August 2013 were $10,425.

12. The foregoing establishes that the Accounting cannot be relied upon by the Court or creditors. Filing a document with such deficiencies is the functional equivalent of not having filed anything at all. Under such circumstances, the imposition of sanctions is warranted.

13. The movant, Ms. Donna Parris, reserves the right to request additional relief related to the distribution of assets and uses of cash, including, but not limited to, objecting to the sale of real property and use or retention of estate property by the Debtor, as unauthorized post-petition transfers by a debtor.

3